UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| RUBY MARIE WILLIAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:18-cv-2109-GMB |
| | ) |
| ANDREW M. SAUL, Commissioner, | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Ruby Marie Williams filed an application for disability insurance benefits in 2016. Her alleged disability onset date is November 1, 2014. Williams' application was denied at the initial administrative level. She then requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a hearing on April 5, 2018, and denied Williams' claims on May 4, 2018. Williams requested a review of the ALJ's decision by the Appeals Council, which declined review on October 24, 2018. As a result, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration (the "Commissioner") as of October 24, 2018.

Williams' case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Under 28 U.S.C. § 636(c)(1) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the full jurisdiction of a

United States Magistrate Judge. Based on its review of the parties' submissions, the relevant law, and the record as a whole, the court concludes that the decision of the Commissioner is due to be AFFIRMED.

## I.  STANDARD OF REVIEW

The court reviews a Social Security appeal to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (citation and internal quotation marks omitted). "Even if the evidence preponderates against the Secretary's factual findings, [the court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Moreover, reversal is not warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

The substantial evidence standard is met "if a reasonable person would accept

the evidence in the record as adequate to support the challenged conclusion." *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)). The requisite evidentiary showing has been described as "more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The court must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987). Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Grant v. Astrue*, 255 F. App'x 374, 375–76 (11th Cir. 2007) (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

## II. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has

lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 416(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The claimant bears the burden of proving that he is disabled, and is responsible for producing evidence sufficient to support his claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a). The Commissioner must determine in sequence:

(1) Is the claimant presently unable to engage in substantial gainful activity?
(2) Are the claimant's impairments severe?
(3) Do the claimant's impairments satisfy or medically equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
(4) Is the claimant unable to perform her former occupation?
(5) Is the claimant unable to perform other work given her residual functional capacity, age, education, and work experience?

*See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015). "An affirmative answer to any of the above questions leads either to the next question, or, [at] steps three and five, to a finding of disability. A negative answer to any question, other than at step three, leads to a determination of 'not disabled.'"

4

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R. § 416.920(a)−(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

### III.  FACTUAL BACKGROUND

Williams lives with her husband in Sylacauga, Alabama. R. 43 & 161.  She was 59 years old at the time of the ALJ's decision. R. 161.  Her insured status expired on December 31, 2016. R. 10–11.  Her primary complaints are pain in her feet, neck, and lower back, and complications resulting from disc surgery. R. 43 & 190.  She also suffers from arthritis. R. 190.  Williams did not graduate from high school, but completed the tenth grade. R. 191.  She last worked as a sales representative and merchandiser until from 2001 to May 30, 2011. R. 50.  As a sales representative, Williams visited eight to ten stores per day and stocked the shelves of each store with yogurt. R. 201.

Williams submitted medical records from the Sylacauga Family Health Center, Coosa Valley Medical Center, Brain and Spine Center, Craddock Health Center, and Dr. Crew Huffman.  The earliest records were prepared on October 21, 2013, when Williams visited the Sylacauga Family Health Center complaining of tender, swollen joints and chronic back pain. R. 273–74.  Nurse practitioner Sue

Owen observed that Williams had tenderness in her neck and swelling in her joints, and diagnosed her with lower back pain and joint pain. R. 273–74. Williams returned in January and August 2014; January, March, April, May, June, September, October, and November 2015; February, April, June, and December 2016; and June 2017—although many of these visits were to evaluate her medication regimen. R. 263–73 & 336–60. Williams was consistently assessed with neck pain, lower back pain, and joint pain. R. 264–72 & 353–60.

On April 6, 2015, Williams had an MRI of her back at the Coosa Valley Medial Center after a referral from Owen. R. 256. The MRI showed "degenerative changes," "mild concentric bulging," and moderate stenosis. R. 256. Dr. Phillip Triantos diagnosed Williams with degenerative disc disease and stenosis. R. 256. Williams returned for another MRI on November 15, 2017, which revealed degenerative changes but no "disc extrusion or central canal stenosis." R. 330.

On May 1, 2015, Williams visited the Brain and Spine Center, also upon referral from Owen. R. 372. Dr. Sean O'Malley examined Williams and concluded that she had "widespread diffuse pain which may be related to her disease but also may be related to some other entity such as fibromyalgia." R. 374. He did not recommend surgery and observed that Williams seemed "to have had good success with her medications." R. 374. Williams returned to Dr. O'Malley on January 25, 2018, and he reported that she had pain in her neck, shoulder, and back, but "does

6

not have any deficits." R. 375. He found that she had stenosis, which he believed to be "the source of the problem." R. 375. He also surmised that her neck tingling and numbness "may be related to carpal tunnel syndrome." R. 377.

On April 4, 2016, Williams saw Dr. Ammar Aldaher at Caddock Health Center, who found that Williams suffered from back pain, neck pain, and dyslipidemia (high cholesterol). R. 329. He concluded that Williams "is able to do work related activities such as sitting, standing, walking, lifting, carrying, and handling objects." R. 329.

The ALJ held a rehearing in Williams' case on April 5, 2018. R. 10. During the hearing, the ALJ posed the following hypothetical to a Vocational Expert ("VE"):

> Assume for the purposes of the first hypothetical an individual with the claimant's same vocational profile who has the capacity to perform a range of light work activity as defined by the Social Security regulations. Let's say no climbing ladders, ropes, scaffolds, no excessive vibration, no unprotected heights, or exposure to hazardous machinery. Would past work—I'm assuming not as typically performed, but as actually performed . . . still be available?

R. 59–60. The VE testified that this hypothetical individual could perform Williams' past work as a merchandiser and sales representative. R. 60.

The ALJ then asked whether this individual could perform past work if unable to push or pull arm controls, and the VE responded affirmatively. R. 60. But the VE testified that all work would be precluded if reaching, grasping, and handling were

7

limited. R. 60–61. She then explained that this individual could miss no more than one day of work per month. R. 61.

The ALJ issued her decision on May 4, 2018. R. 18. The ALJ first found that Williams last met the Social Security Act's "insured status requirements" on December 31, 2016. R. 12. Under step one of the five-step evaluation process, the ALJ found that Williams has not engaged in substantial gainful activity from November 1, 2014 through December 31, 2016. R. 12. The ALJ concluded that through December 31, 2016, Williams suffered from the following severe impairments: "status post lumbar discectomy L5-S1 (2003) and cervical fusion C5-6 and C6-7 (2006), degenerative changes of the lumbar spine, [and] degenerative changes of the cervical spine with moderate foraminal stenosis[.]" R. 12. The ALJ concluded at step three of the analysis that none of Williams' impairments met or medically equaled one of those listed in the applicable regulations. R. 13.

At steps four and five, the ALJ found that Williams has the residual functional capacity ("RFC") to perform light work with some limitations.[1] Specifically, the ALJ determined the following:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except no climbing ladders, ropes or scaffolds; no

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

8

excessive vibrations; no unprotected heights or exposure to hazardous machinery; no pushing/pulling of arm controls.

R. 13. Ultimately, the ALJ determined that Williams is able to perform past relevant work as a merchandiser at the light exertional level, which "did not require the performance of work-related activities precluded by the claimant's" RFC. R. 17. Therefore, the ALJ concluded that Williams was not disabled from November 1, 2014 through December 31, 2016. R. 17. Based on these findings, she denied Williams' claims. R. 18.

## IV. DISCUSSION

Williams presents two arguments on appeal: (1) the ALJ was required to consult a medical expert to determine Williams' disability onset date, and (2) substantial evidence does not support the ALJ's finding that Williams can perform past work. Doc. 8 at 12–26. The court finds that substantial evidence supports the opinion of the ALJ.

### A. Onset Date of Disability

As stated above, the ALJ found that Williams was not disabled on or before her insured status on expired December 31, 2016. To qualify for disability benefits, a claimant "must prove that her disability existed prior to the end of her insured stats period, and, after insured status is lost, a claim will be denied despite her disability." *Hughes v. Comm'r of Soc. Sec. Admin.*, 486 F. App'x 11, 13 (11th Cir. 2012). Williams contends that the ALJ was required to "seek medical advice" before

determining that Williams was not disabled on or before December 31, 2016, but Social Security Ruling ("SSR") 83-20, to which Williams cites in her brief, does not support her position.

SSR 83-20 requires the ALJ to determine the claimant's onset date of disability as, "in many cases, the onset date is critical because it may be determinative of whether the individual is entitled to benefits." *Smith v. Soc. Sec. Admin., Comm'r*, 2019 WL 1281199, at *4 (N.D. Ala. Mar. 20, 2019) (citing SSR 83-20). SSR 83-20 notes that, in some instances, an ALJ must infer the onset date of disability from the medical records and "other evidence describing the history and symptomatology of the disease process." *Id.* But, contrary to Williams' contention, "the decision to call on the services of a medical expert when onset must be inferred is always at the ALJ's discretion." *Santiago v. Berryhill*, 2018 WL 3208076, at *5 (N.D. Ala. June 29, 2018).

Nevertheless, the ALJ pointed to substantial evidence in the record supporting her opinion that Williams was not disabled from November 1, 2014 to December 31, 2016. The ALJ noted Dr. O'Malley's May 2015 examination during which he observed that Williams' strength was a five on a five-point scale, her gait was good, her muscle tone was normal, she had no tenderness to touch, and her cervical spine had a good range of motion. R. 282–83. The ALJ also pointed to April 2015 MRIs showing mild degenerative changes and mild stenosis. R. 278–79 & 283. And the

ALJ noted that Williams' had a full range of motion in her back and extremities and denied back pain during examinations in February, April, June, and July 2016. R. 328 & 345–52. Moreover, consultation of a medical expert is not required where the ALJ ultimately finds that the claimant is not disabled. *See, e.g.*, *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 776 (11th Cir. 2010) ("We conclude that the ALJ did not contravene SSR 83-20 because the ALJ ultimately found that [the claimant] was not disabled, and SSR 83-20 only required the AJ to obtain a medical expert in certain instances to determine a disability onset date after a finding of disability."). And, importantly, where medical records pre-dating a claimant's last-insured date do not establish a disabling impairment, no inference is required and an ALJ need not consult a medical expert, even where a condition may be degenerative. *See, e.g.*, *O'Neal v. Comm'r of Soc. Sec.*, 723 F. App'x 962, 962–63 (11th Cir. 2018) (finding that the ALJ was permitted to conclude that the claimant's disability onset date was after the last-insured date where medical records only showed a disabling impairment after the last-insured date).

Williams, on the other hand, only points to the April 2015 MRI and subsequent referral to the Brain and Spine Center. Doc. 8 at 22. Williams also highlights an MRI in 2017 and second referral to the Brain and Spine Center in 2018, but these occurred after her insured status expired on December 31, 2016. *See, e.g.*, *Ashley v. Comm'r, Soc. Sec. Admin.*, 707 F. App'x 939, 944 (11th Cir. 2017)

("Evidence of deterioration of a previously considered condition may subsequently entitle a claimant to benefit from a new application, but it is not probative of whether the claimant was disabled during the relevant time period under review."). Williams can point to no other evidence in the record contradicting the ALJ's findings. Accordingly, substantial evidence in the record supports the ALJ's findings and the ALJ was not required to consult a medical expert before determining that Williams did not suffer from a disabling impairment before December 31, 2016.

**B.     Ability to Perform Past Work**

Williams asserts, in conclusory fashion, that the ALJ's finding that Williams can perform her past work is "not supported by [s]ubstantial [e]vidence and is not in accordance with proper legal standards." Doc. 8 at 23. The gist of Williams' argument is that the ALJ did not properly develop evidence regarding the physical requirements of Williams' past work. Doc. 8 at 25. It is, of course, the claimant's burden to demonstrate her inability to perform past relevant work. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

While Williams contends that the ALJ did not develop evidence related to the physical requirements of Williams' past work, the record reflects that the ALJ specifically questioned the VE at the hearing regarding the classification of her past work, which was light. R. 59. She then asked the VE if a person with Williams' vocational profile could perform light work with the following limitations: "no

climbing ladders, ropes, scaffolds, no excessive vibration, no unprotected heights, or exposure to hazardous machinery." R. 60. The VE responded affirmatively. R. 60. The ALJ then added pushing and pulling of arm controls to the list of limitations, and the VE again responded that Williams' past work would "still be available." R. 60. Moreover, there is other evidence in the record regarding Williams' past work. Accordingly, there was "ample evidence in the record about the demands of [Williams'] past work." *Holder v. Soc. Sec. Admin.*, 771 F. App'x 896, 899 (11th Cir. 2019) (finding the ALJ developed an adequate record with respect to the claimant's past work where the ALJ relied on a Work History Report, the claimant's testimony, and VE testimony).

## V. CONCLUSION

For these reasons, the court concludes that the Commissioner's decision is supported by substantial evidence and based upon the proper legal standards. Accordingly, the decision of the Commissioner is AFFIRMED.

A final judgment will be entered separately.

DONE and ORDERED on March 11, 2020.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE